W. S. BYNUM, Adm'r. *de bonis non* of PAUL KISLER *v.* MARGA- RETT HILL and others.

A wills to his daughter B as follows: " I will and bequeath to my daugh- ter B a negro boy named Wilson, and all the other property that she has in her possession; and at my death, I will and direct that my ex- ecutors pay her the sum of $75, for the purchase of a horse beast: And at the death of my wife, I will and bequeath B the tract of land I purchased from R. Summey, she accounting to my estate for the sum of three hundred and fifty dollars, which my executors retain out of my estate previous to her receiving any more of my estate:" *Held* that this $350 is not a charge upon the land devised to his daugh- ter B; and that the intention of A was to direct his executor to retain that amount out of the share coming to her upon the death of his wife.

CIVIL ACTION, to obtain the construction of a clause in the will of one Paul Kistler, heard by his Honor, *Judge Logan,* at the Spring Term, 1874, of LINCOLN Superior Court.

The following facts were agreed and submitted to his Honor, on the hearing below :

Paul Kistler died in 1848, leaving a last will and testament, which was duly admitted to probate in Lincoln county. (So much of said will as is material to a proper understanding of the point decided is recited in the opinion of Justice SETTLE.)

The plaintiff, W. S. Bynum, is now administrator *de bonis non* of the estate of Paul Kistler—the executor named in said will having become insolvent and having been removed.

That the administrator *de bonis non* has sold real estate to the amount of $584, and has no personal assets in his hands.

That the negroes given to the testator's widow for life and after death directed to be sold, would have brought some $3,500 or thereabouts, and that all the debts of the testator have been paid.

That one Robert Sumney purchased the land left to his daughter, Margaret Hill, by the testator, before the death of the widow, and that one Cobb bought a part of the same at execution sale against Sumney. That Sumney purchased without notice of the charge, if there be any, only so far as the recording and filing of the will in office may be notice.

The widow died in 1871.

Upon the foregoing facts, his Honor was of opinion that by a proper and equitable construction of the will of Paul Kistler, his intention was that his estate should be equally divided among his children ; therefore, if any loss should arise in the value of the estate, as by the emancipation of the slaves, unforeseen to the testator, the loss should fall equally upon each of his children. Hence, it being admitted that the value of the slaves before emancipation was sufficient to discharge all the liabilities of the estate, the conclusion is that the sum of $350, " which my executors " are directed " to retain out of my estatate previous to her " (his daughter Margaret,) " receiving any more of my estate," is not a charge upon the R. Sumney tract of land, devised to his said daughter; but the

loss by emancipation of the slaves is to fall equally upon all the children, the said Margaret being liable for that proportion of the $350, shown by the loss in the value of the slaves.

From this judgment the plaintiff appealed.

*Wilson & Son*, for appellant.
*Smith & Strong*, contra.

SETTLE, J.   The ninth item of Paul Kistler's will reads thus : " I will and bequeath to my daughter, Margaret Hill, a negro boy named Wilson and all the other property that she has in her possession, and at my death I will and direct that my executors pay her the sum of seventy-five dollars for the purchase of a horse beast.   And at the death of my wife I will and bequeath Margaret Hill the tract of land I purchased from R. Sumney, she accounting to my estate for the sum of three hundred and fifty dollars, which my executors retain out of my estate previous to her receiving any more of my estate."

Question : Is the sum of three hundred and fifty dollars a charge upon the land devised to Margaret Hill ?   It seems that the testator was possessed of a good estate, consisting both of realty and personalty ; that he gave the greater portion of it to his wife for life, giving, however. something to each one of his children in separate items; and then by the twelfth and last item of his will, he directs his executors, after the death of his wife, to sell the remainder of his estate of every kind not disposed of by his will, and that the proceeds, together with all moneys, notes and accounts be collected and divided between his nine children, (naming them,) share and share alike.

It is admitted that the value of the slaves directed to be sold is three thousand six hundred dollars.   From this re it would seem that the testator expected that there would be a considerable sum of money to be divided betw en his children upon the death of his wife, and when we take into consideration the words of the clause devising lands to Margaret Hill,

in connection with the condition of his estate, we think much light is thrown upon the subject.

If the testator had stopped when he said, " I will, &c., Margaret Hill, land, &c., she accounting to my estate for three hundred and fifty dollars," there would have been ground for the argument. But he goes on to point out how she shall be made to account for this sum, to-wit, " which my executors retain out of my estate previous to her receiving any more of my estate."

Why say any *more* of my estate unless he intended that she should receive *some* of his estate in any event, to-wit, all that is bequeathed and devised by the ninth item of the will.

We think the intention of the testator was to direct his executors to retain that amount out of the share which he then had every reason to suppose would be coming to Margaret Hill upon the death of his wife, but we see nothing either in the ninth item or in the entire instrument, to justify the conclusion that he intended to make it a charge upon the land.

PER CURIAM.    The judgment of the Superior Court is affirmed.